**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Case No. 15-cv-02223-CMA
Criminal Case No. 09-cr-00266-CMA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

3.  GARY L. WALKER,

      Defendant.

---

**ORDER UNSEALING, IN PART, HEARING TRANSCRIPTS**

---

    This matter is before the Court on remand from the Tenth Circuit Court of Appeals (Doc. # 1124), which vacated this Court's Order (Doc. # 1114) denying a Motion by the Colorado Springs Fellowship Church ("CSFC") to Unseal Records (Doc. # 1106) that this Court has restricted. After reviewing the Tenth Circuit's Order and Judgment, the Court unseals, in part, the hearing transcripts (Doc. ## 1107–1109).

## I.  <u>BACKGROUND</u>

    On July 2, 2009, Mr. Gary Walker and five other defendants (together, the "IRP-6") were charged by indictment with conspiracy to commit wire and mail fraud. (Doc. # 1.) All of the IRP-6 members belonged to the same church—CSFC—which is led by Pastor Rose Banks. Mr. Walker and the other defendants were assigned court appointed attorneys. (Doc. # 15.) However, before trial, they all terminated the employment of their respective attorneys and proceeded *pro se*. (Doc. # 361.) After a

full jury trial, the members of IRP-6 were found guilty and convicted on multiple counts. (Doc. ## 447–79.)

To assist them in sentencing and other post-conviction matters, the IRP-6 elected to retain another CSFC member, Ms. Gwendolyn Lawson[1], as their attorney. The IRP-6 also retained Mr. Lowther, an attorney located in Georgia (Doc. # 1108 at 159), because Ms. Lawson had very little federal court experience (*id.* at 164). On July 23, 2012, with the assistance of Ms. Lawson and Mr. Lowther, Mr. Walker participated in his sentencing hearing. The Court sentenced Mr. Walker to 135 months in prison. (Doc. # 782.)

As Mr. Walker served his sentence, however, he began questioning some of the teachings of Pastor Banks and the amount of control she exerted over his life. Eventually, Mr. Walker left CSFC. *See generally* (Doc. # 1108 at 149–157). He then terminated Ms. Lawson's and Mr. Lowther's representation of him and obtained other counsel. On October 5, 2015, in coordination with his new counsel, Mr. Walker filed a Motion and Memorandum of Law Filed Pursuant to 28 U.S.C. § 2255. (Doc. # 902.) He claimed that (1) his waiver of his right to counsel before the trial was neither informed nor voluntary; and (2) he received ineffective assistance of counsel at sentencing. (*Id.*) The Court granted Mr. Walker's § 2255 petition and scheduled a three-day evidentiary hearing. (Doc. # 995.)

---

[1] Gwendolyn Lawson was formerly known as both Gwendolyn Jewell and Gwendolyn Solomon, and she changed her name during the years that this case was active. Throughout this Order, the Court refers to her as Ms. Lawson, which is her current name.

Before the hearing commenced, Mr. Walker's counsel requested that the hearing be closed. After carefully considering the importance of public access to judicial proceedings, the Court denied the request. The Court explained that counsel had "not met the burden . . . that is necessary to restrict the public's right to access" the hearing. (Doc. # 1107 at 9.)

After hearing the testimony of sixteen witnesses during the course of the § 2255 hearing, the Court concluded that Mr. Walker's 28 U.S.C. § 2255 habeas petition should be granted because the evidence demonstrated that Mr. Walker's counsel, Ms. Lawson, represented actively conflicting interests and that this conflict actually and adversely affected her performance on his behalf. These conflicts included her duties to her other clients, and possibly her allegiance to her pastor, and prevented her from presenting evidence that might have affected the Court's determination about whether to assess a 4-level aggravating role enhancement against Mr. Walker under Section 3B1.1(a) of the Sentencing Guidelines.

Although Mr. Walker was also represented by another attorney at sentencing, Joshua Lowther, the evidence adduced during the § 2255 hearing did not allow the Court to find that Mr. Lowther had sufficient authority as counsel to overcome the effect of Ms. Lawson's actual conflict. *Strickland v. Washington*, 466 U.S. 668, 692 (1984); *Cuyler v. Sullivan*, 446 U.S. 335, 348–350 (1980); *see also United States v. Bowie*, 892 F.2d 1494, 1500 (10th Cir. 1990) (holding that "defense counsel's performance was adversely affected by an actual conflict of interest if a specific and seemingly valid or

genuine alternative strategy or tactic was available to defense counsel, but it was

inherently in conflict with his duties to others . . . ."). In this specific circumstance,

prejudice is presumed and need not be proven. *Strickland*, 466 U.S. at 692.

After the § 2255 hearing, Ms. Lawson, acting on behalf of Mr. Walker's other five

codefendants, moved to continue the resentencing hearing so that she could present

rebuttal testimony in opposition to Mr. Walker's requested sentence reduction. (Doc. #

1075.) The Court denied Ms. Lawson's motion and proceeded with Mr. Walker's

resentencing, reducing his sentence to 70 months. (Doc. # 1082.)

Mr. Walker then moved to restrict public access to the transcripts of the § 2255

hearing to preserve the safety of the witnesses. (Doc. # 1080.) As a result of both the

the original trial and § 2255 hearing, the Court became privy to facts and circumstances

that are pertinent to whether the transcripts should be unsealed. The record shows that

Pastor Banks and some CSFC members have engaged in a consistent pattern of

harassment against anyone who does not strictly comply with the demands of Pastor

Banks.[2] Moreover, at the conclusion of her testimony, Ms. Lawson, who was

subpoenaed to testify at the § 2255 hearing, surreptitiously substituted a "dummy

binder" of the same size and color as the Court's Exhibit Notebook, but which contained

---

[2] In the interests of protecting the safety and welfare of these witnesses, the Court has determined that their testimony should remain under restriction. Because the principal concern of CSFC is that the testimony of the witnesses impugned CSFC's reputation, the Court will not reiterate or disclose, in this Order which is public, the specifics of that testimony.

only tabbed dividers and blank sheets of paper, for one of the Court's Exhibit Notebooks and walked out of the courtroom with the Court's Exhibit Notebook. *See* (Exhibit 1).

There had previously been similar unprofessional activity on the part of the Defendants which led this Court to conclude that CSFC members and Pastor Banks had no respect for the rights of others, especially those with whom they disagreed. For example, on the first day of trial after selection of the jury, the Court directed the Defendants to turn in all of the jury rosters, which contained the names and addresses of the jurors. Defendants violated the Court's order and removed one of the rosters from the Courtroom. The roster was returned the next day and the Defendants swore that they had not copied it. However, after the jury returned a verdict of guilty as to all defendants, in violation of this Court's explicit directive that the parties could not contact any of the jurors, members of CSFC, acting on behalf of the IRP-6, began harassing the jurors. One of the jurors reported CSFC's harassment to the Court. The Court then issued an Order *sua sponte*, reiterating that the defendants and any of their representatives are prohibited from contacting members of the jury. (Doc. # 582.) Additionally, as a condition of their release prior to sentencing, the defendants agreed that they would refrain from any additional contact with jurors absent a court order. (Doc. # 592.) However, **even after this stipulation**, members of CSFC acting on behalf of the defendants continued to harass multiple jurors.[3] (Doc. ## 851, 883.)

---

[3] *See generally* Press Release, A Just Cause, <u>Advocacy Group, A Just Cause, Questions Juror's Silence Following Guilty Verdict of Six Colorado Executives (IRP6)</u> (Feb. 11, 2014), https://www.prweb.com/releases/2014/02/prweb11573276.htm [https://perma.cc/7MQ2-J9DE].

For these reasons, the Court granted Mr. Walker's request and placed all transcripts from Mr. Walker's § 2255 proceeding (Doc. ## 1107–1109) under a Level 2 Restriction (Doc. # 1085). The Court subsequently unsealed the portions of the transcript which contained testimony of Ms. Lawson. (Doc. # 1090.) CSFC moved to unseal the remaining fifteen transcripts, arguing both that it had a private interest in the transcripts of the testimony from the hearing because the witnesses impugned CSFC's reputation and that it had a general First Amendment and common law public right of access to judicial records. (Doc. # 1106.) The Court denied CSFC's motion and kept the transcripts under seal. (Doc. # 1114.)

CSFC appealed this Court's decision to the Tenth Circuit. (Doc. # 1115.) After considering the briefs and the record, the Tenth Circuit vacated this Court's Order (Doc. # 1114) denying CSFC's previous Motion to Unseal Records. (Doc. # 1106.) The Court now considers the Tenth Circuit's instructions in its Order on remand.

## II. __LEGAL STANDARD__

The United States has a long tradition of making its courts open to the public. In fact, "[j]udicial records are public documents almost by definition, and the public is entitled to access by default." *Riker v. Fed. Bureau of Prisons*, 315 F. App'x 752, 755 (10th Cir. 2009) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 110, 121 (2d Cir. 2006)). Both the accused and the public benefit from this right to access court proceedings because public access helps promote fair trials. *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 7 (1986). An appearance of fairness, in turn, heightens

6

public respect for the judiciary. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982). Furthermore, "[t]he institutional value of the open criminal trial is recognized in both logic and experience." *Id*. Public access to the court system extends not only to public proceedings, but to judicial records as well. *Nixon v. Warner Commc'ns*, 435 U.S. 589, 596 (1978).

However, this right of public access to the courts and its records is not absolute. *Id*. at 598. In some cases, the right to an open trial can give way to other interests. *Davis v. Reynolds*, 890 F.2d 1105, 1109 (10th Cir. 1989). An accused's right to a public trial must be "carefully balanced against the government's competing interest in protecting vulnerable witnesses from embarrassment and harm." *Id*. Courts have concluded that the presumption of public access "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values . . ." *Press-Enter. Co.*, 478 U.S. at 10.

The decision to restrict public access "is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599. "Every court has supervisory power over its own records and files," and courts may deny public access to court files if the files might become vehicles for improper purposes, such as "to gratify private spite or promote public scandal." *Id*. at 598.

There is "no comprehensive formula" to guide trial courts in determining when public access to judicial documents is properly limited because "[t]he analysis of the

question of limiting access is necessarily fact-bound." *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985) (citing *Nixon*, 435 U.S. at 598). As the Tenth Circuit explains in its Order and Judgment, courts have articulated three relevant factors to consider. (Doc. # 1124 at 20–21.) First, when the district court uses "the sealed documents to determine litigants' substantive legal rights," there is a strong presumption of public access. *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (internal quotation marks omitted). Second, if a criminal hearing is conducted without a jury present, public access is an important way to hold the judge accountable. *Press-Enter. Co.*, 478 U.S. at 12–13. Third, if a court proceeding was already made public, the party's interest in sealing the transcripts of the testimony is diminished. *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007).

Once the trial court has exercised its sound discretion in denying public access to certain judicial records, the trial court is then responsible for narrowly tailoring its restrictions. *Press-Enter. Co.*, 478 U.S. at 10. Any trial court order must be "specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* at 9–10. Yet "at times the sensitive nature of the sealed judicial documents may warrant the court justifying the lack of public access in conclusory terms." *Riker*, 315 F. App'x at 755.[4]

---

[4] In *Riker*, when the district court sealed the judiciary records to protect Mr. Riker's safety, it described its reasons for the seal in conclusory terms because of the sensitive nature of the sealed material. In contrast, another Tenth Circuit opinion, *Simpson v. Kansas*, holds that the district court's justification for sealing "confidential medical and personal information" is "too broad and conclusory to overcome the presumption against sealing." *Simpson v. Kansas*, 593

Finally, after a court record is sealed and a motion is made to remove that seal, "the district court should closely examine whether circumstances have changed sufficiently to allow the presumption allowing access to court records to prevail." *Miller v. Ind. Hosp.*, 16 F.3d 549, 551–52 (3rd Cir. 1994).

## III. <u>ANALYSIS</u>

The Tenth Circuit's Order and Judgment instructs this Court to conduct additional analysis before determining that any witness testimony currently under Level 2 restriction (Doc. ## 1107–1109) should be kept sealed. First, because some time has elapsed since the Court issued its Orders restricting access to the hearing transcripts, the Tenth Circuit indicates that the Court "may need to consider whether circumstances have changed" such that unsealing the transcripts is now appropriate. (Doc. # 1124 at 27.) Second, the Tenth Circuit instructs this Court to analyze the facts of the instant case in light of the "the strong presumption in favor of the public right of access" to judicial records, which is heightened when courts rely on sealed testimony to make decisions, those decisions occur in the absence of a jury, and the information that is sealed has already been revealed in open court. (*Id.* at 24.)

---

F. App'x 790, 799 (10th Cir. 2014). However, the facts of the instant case are much more like *Riker*, which aims to protect the **safety** of a witness, than *Simpson*, which aims to protect the **privacy** of an individual. Here, like in *Riker*, this Court is concerned for the safety of the witnesses that testified in Mr. Walker's § 2255 hearing. Therefore, this Court may sometimes describe its reasoning for sealing certain testimony in conclusory terms so as not to compromise the safety of the witnesses. *See infra* Section III(B)(2)(a).

Through the lens of this legal analysis, the Tenth Circuit instructs this Court to determine if "a narrower alternative to restricting access to the full transcript" exists. (*Id.* at 27.) Upon analyzing the relevant factors identified by the Tenth Circuit, it is evident that the safety of many of the witnesses is still at risk, and therefore, some, but not all, of the testimony must remain restricted.

## A. CIRCUMSTANCES HAVE NOT CHANGED SIGNIFICANTLY

First, the Court considers the extent to which circumstances have changed since its initial Orders restricting access. (Doc. ## 1085, 1114.) The safety and welfare risk to many of the witnesses remains high. A Just Cause, an organization founded by CSFC to act on behalf of and in coordination with the IRP-6, has engaged in a campaign to harass all involved with this case, and the Court has no reason to conclude that it will halt its pattern of harassment. As recently as October 22, 2019, A Just Cause alleged, without evidence, that the Court is concealing misconduct and "secretly used her court to conduct personal attacks against [IRP-6's] Pastor (Rose Banks) and Church (Colorado Springs Fellowship Church)." A Just Cause, Colorado Federal Judge and Prosecutor Entangled in Misconduct Cover-Up (Oct. 22, 2019), http://www.digitaljournal.com/pr/4481574 [https://perma.cc/68RS-CNTM]. If all witness testimony from the § 2255 hearing were to be unsealed, the Court is concerned that CSFC would turn its attention away from the Court and begin harassing these witnesses. Therefore, the Court determines that circumstances have not changed

significantly, and as such, those witnesses who testified about CSFC must remain protected and their testimony will remain sealed.

**B.     WEIGHING THE PUBLIC'S RIGHT TO ACCESS JUDICIAL TRANSCRIPTS AGAINST THE RISKS TO THE WITNESSES**

In order to weigh the public's right to access the judicial transcripts at issue against the risks to the witnesses, the Court must first apply the relevant legal standards, including the additional factors identified by the Tenth Circuit, to the instant case. Second, the Court has reviewed the testimony of the individual witnesses to ensure that any necessary restrictions are as narrowly tailored as possible.

1.     Application of Legal Standards

Public access to judicial documents may be restricted in limited circumstances. *Nixon*, 435 U.S. at 598. In the instant case, the relevant facts and circumstances are such that restricting public access is essential to preserving the safety and security of many of the testifying witnesses. The Court is particularly concerned that, because CSFC has previously engaged in harassment and intimidation tactics, it may do so again, this time targeting witnesses from the § 2255 hearing. The Court does not come to this conclusion lightly.

CSFC lashes out—unrelentingly—towards those whom Pastor Banks perceives to have wronged her or her church. After the initial trial, where the Court made clear that none of the parties were to contact jurors, CSFC staged a coordinated effort to contact and repeatedly harass members of the jury. This continued even after a court order and

a stipulation that neither the parties nor anyone acting on their behalf would contact jurors without the Court's permission.

Later, Ms. Lawson, after representing Mr. Walker at sentencing, formally opposed his resentencing. Ms. Lawson even sought to provide rebuttal testimony to convince the Court not to reduce Mr. Walker's sentence. Additionally, A Just Cause's scathing press releases continue, even years after the verdict was entered. This persistent behavior of CSFC demonstrates the type of harassment that witnesses in the § 2255 hearing may face, if their testimony is unsealed.

Furthermore, Ms. Lawson's intentional swapping of a "dummy binder" for the Court's Exhibit Notebook and CSFC's harassment of the jurors demonstrates that CSFC members will go to great, even possibly illegal, lengths on behalf of CSFC. In its appeal brief requesting the unsealing of the § 2255 hearing transcripts, CSFC claims that it wants to determine the extent to which it has been maligned by the testimony. (Doc. # 1116-2 at 3, 6.) This is a disingenuous claim. Members of CSFC were present in the courtroom throughout the § 2255 hearing, and they generally know what was said. Instead, the Court believes that CSFC wants transcripts of the testimony so that its members, even those who were not present at the hearing, can threaten and harass witnesses who were critical of CSFC. If the Court were to release the detailed testimony of all the witnesses, the precise language would serve only to enflame CSFC and put the witnesses at risk of harm.

Given the past conduct of members of CSFC—harassment of the jury, disparagement of the Court, opposing Mr. Walker's resentencing, and absconding with an evidence binder—the Court is concerned that Pastor Banks and other CSFC members will continue their pattern of harassing behavior and will use certain witness testimony to "gratify private spite." *Nixon*, 435 U.S. at 598. After carefully examining the facts in the instant case, the Court determines that this is one of those cases in which the right of public access to judicial records is outweighed by the importance of protecting certain witnesses from further harm. *Davis*, 890 F.2d at 1109.

The bar for restricting public access to judicial records is high, and the Court does so only when the risk to the witnesses is significant. *Id.* Some of the testimony in this case does not meet that standard, and therefore, can be released in full. *See infra* Section III(B)(2)(b). On the other hand, even after considering this high legal standard, the Court determines that the testimony of many witnesses must remain sealed. *See infra* Section III(B)(2)(a). In reaching that decision, the Court considers in detail the three particular factors that the Tenth Circuit highlighted in its Order and Judgment. (Doc. # 1124.) Specifically, the Tenth Circuit emphasized: reliance on sealed records to determine substantive rights; the absence of a jury; and whether sealed information has already been disclosed.

a.      *Relying on Sealed Judicial Records to Make a Judgment*

There is a strong presumption in favor of public access to judicial records, particularly when a district court uses sealed documents to determine litigants'

13

substantive legal rights. *Pickard*, 733 F.3d at 1302. The tradition of open proceedings helps alleviate concerns about judicial bias. *Id.* Here, in determining Mr. Walker's resentencing, the Court considered only testimony given in open court. This public access mitigates concern about using the restricted testimony to determine Mr. Walker's substantive legal rights and undermines any argument that the Court's ruling was made based on testimony unavailable to the public. After considering this factor, the Court determines that, because it allowed public access to the proceedings, restricting access to the testimony of witnesses who are at risk of harassment is the most appropriate way to "carefully balance[]" the public's right of access to the transcripts with safety concerns for the witnesses. *Davis*, 890 F.2d at 1109.

      *b.*    *Absence of a Jury*

Absence of a jury makes the importance of public access to a proceeding even more significant. *Press-Enter. Co.*, 478 U.S. at 12–13. This helps keep the judge accountable and promotes respect for the judiciary. *Id.* Again, the Court allowed full public access to the proceeding at issue, which was attended by members of the public. A Just Cause even issued multiple press releases about the hearing, which amplified the public's awareness of the Court's decisions. *See, e.g.*, Press Release, A Just Cause, <u>Maligned Denver Federal Judge Shortens IRP6 Defendant's Sentence Based on Fantastic Lies</u> (July 6, 2017), http://www.releasewire.com/press-releases/release-828015.htm [https://perma.cc/64VQ-DFSH]; Press Release, A Just Cause, <u>Colorado Federal Judge Accused of Slandering Colorado Springs Pastor, Church, and Religion</u>

from the Bench (July 10, 2017), http://www.releasewire.com/press-releases/release-829509.htm [https://perma.cc/RBQ3-7VVK]. In considering this factor, the Court finds that, although there was no jury present, there was attendance by and engagement from the public, which helps keep this Court accountable.

Furthermore, the presence of a jury helps protect the defendant from unfair treatment during trial. *Davis*, 890 F.2d at 1109 (noting that "[o]ne of the major purposes for the public trial guarantee . . . is to safeguard the defendant from potentially perjurious or abusive testimony."). In the instant case, Mr. Walker, the defendant, is not at risk of unfair treatment regarding the sealing of the transcripts because he was the party who requested the restrictions. Instead, the Court is concerned about unfair treatment and harassment of Mr. Walker, as well as other witnesses, if the records are **not** sealed. Therefore, one of the ultimate goals of having a jury present for court proceedings—protecting the defendant—is actually best accomplished by upholding the Level 2 restriction on certain witness testimony.

> c. *Sealed Information Has Already Been Disclosed*

When information is disclosed in public court hearings, this undermines privacy concerns about judicial transcripts. *Mann*, 477 F.3d at 1149. As discussed previously, all the witness testimony in the § 2255 hearing was given in an open courtroom. Where, as here, witnesses face a significant risk of harassment, the distinction between merely hearing their testimony audibly as opposed to accessing transcripts of the testimony matters significantly. If the Court were to release the testimony of many of the

witnesses, those not present at the hearing could identify, locate, and harass those who gave testimony critical of CSFC. As indicated by CSFC members' prior harassment of Jurors, this concern is not theoretical.

Jury selection, like the witness testimony in this proceeding, was public. But once CSFC members obtained a written list of the names of the jurors, CSFC members began harassing jurors methodically. The Court is concerned that, if certain written witness testimony is released, this could lead to harassment of the witnesses, as it led to harassment of the jurors. Therefore, the testimony of many of the witnesses must remain under Level 2 restriction. However, this analysis is necessarily "exercised in light of the relevant facts and circumstances" of the testimony of each of the witnesses. *Hickey*, 767 F.2d at 708.

2.    Narrowly Tailoring Restrictions on Witness Testimony

As the Tenth Circuit instructed in its Order and Judgment (Doc. # 1124), this Court has reexamined the witness transcripts in the instant case to determine whether the restrictions on public access can be more narrowly tailored. *See Press-Enter. Co.*, 478 U.S. at 10. The Court now narrowly tailors its restrictions to the § 2255 hearing transcripts by releasing the statements of the Court and releasing the testimony of some of the witnesses.

First, A Just Cause continues to publish press releases alleging that the Court

wants to keep transcripts sealed to hide the Court's misconduct.[5] The Court takes that

accusation seriously, but it has nothing to hide. The Court dispels that notion by

releasing all statements by the Court during the § 2255 hearing, except any names of

witnesses whose identities are sealed. This action is both responsive to CSFC's

concerns and attentive to the legal principle that public access to courts helps promote

fair trials and a respect for the judiciary. *Press-Enter. Co.*, 478 U.S. at 7; *Globe*

*Newspaper Co.*, 457 U.S. at 606.

Second, the Court takes seriously the concerns of CSFC, which worries that

"misinformation and innuendo about . . . CSFC was laced throughout the [§] 2255

hearing," and this could have an "adverse impact on its ministry." (Doc. # 1106 at 1, 3.)

---

[5] *See* Press Release, A Just Cause, <u>10th Circuit Judges and Harvey Weinstein Have Much in Common, Says Advocacy Group: Colorado Federal Judges Abuse Power and Cover Misconduct</u> (Dec. 4, 2017), http://www.releasewire.com/press-releases/10th-circuit-judges-harvey-weinstein-have-much-in-common-says-advocacy-group-900336.htm [https://perma.cc/8TVG-63GZ] ("'Why are all documents from Walker's habeas proceeding sealed and Judge Arguello's actions being kept secret and hid (sic) from the public?' questions Stewart. 'In my view, this entire proceeding was not only a fraud but a feeble attempt by Judge Arguello and the government to absolve themselves of wrongdoing,' says Stewart."); Press Release, A Just Cause, <u>Impeachment Sought Against Colorado Federal Judge for Intentionally Violating Federal Laws: Investigation by Office of Attorney Regulation Counsel Exposes Misconduct by Federal Judge Christine Arguello</u> (June 4, 2018), http://www.releasewire.com/press-releases/impeachment-sought-against-colorado-federal-judge-for-intentionally-violating-federal-laws-988851.htm [https://perma.cc/G8MA-X7K3] (alleging that "Judge Arguello sealed these proceedings to conceal misconduct by her and her clerks."); Press Release, A Just Cause, <u>Colorado Federal Judge and Prosecutor Entangled in Misconduct Cover-Up</u> (Oct. 22, 2019), http://www.digitaljournal.com/pr/4481574 [https://perma.cc/68RS-CNTM] (claiming "Judge Arguello took her concealment of misconduct to another level, this time sealing an entire IRP6 related proceeding from public view where it is alleged she secretly used her court to conduct personal attacks against the IRP6's Pastor (Rose Banks) and Church (Colorado Springs Fellowship Church.)").

As the Tenth Circuit recognizes in its Order and Judgment (Doc. # 1124 at 30), when a party is concerned that its reputation may be diminished because of testimony, "keeping the transcript out of the public eye" may be the best way to protect that party's reputation. The same logic applies here: CSFC's reputation will be best protected by not releasing testimony that criticizes it. As set forth below, the Court has "narrowly tailored" its restrictions to allow for as much public access as possible without providing additional fodder for harassment. *Press-Enter. Co.*, 478 U.S. at 10.

The Court has determined that the testimony of thirteen witnesses will remain under Level 2 restriction, while the testimony of two witnesses is released in full.[6]

a.    *Witness Testimony to Remain Under Level 2 Restriction*[7]

The purpose of keeping certain records sealed is twofold: the Court is concerned both with protecting the safety and welfare of the witnesses and with protecting CSFC against any potentially slanderous statements made about it during the § 2255 hearing. The Court deliberately describes its reasoning for maintaining the Level 2 restriction on these witnesses' testimony without revealing specific details, because disclosing the substance of the witnesses' testimony to justify its seal would undermine the very

---

[6] Although sixteen witnesses originally testified in the § 2255 hearing, the Court has already unrestricted the testimony of one of the witnesses—Gwendolyn Lawson. (Doc. # 1102.) Therefore, this Court limits its analysis to the transcripts of the testimony of the fifteen remaining witnesses.

[7] In an attempt to protect the witnesses, the Court identifies the witnesses by number, as opposed to name, using the order in which they appeared in front of the Court.

purpose of the seal. *See Riker*, 315 F. App'x at 755 (articulating that the "sensitive nature of the sealed documents" can warrant "conclusory treatment").

Although the Court determines that the entirety of the testimony of the following witnesses must remain sealed, the Court identifies, for ease of the Tenth Circuit's review, certain citations in the transcripts that may either threaten the safety of the witnesses or potentially slander CSFC. *See Press-Enter. Co.*, 478 U.S. at 9–10 (explaining that a trial court order must be "specific enough that a reviewing court can determine whether the closure order was properly entered").

### **Witness #1**[8]

The testimony of Witness #1, Mr. Walker, must remain at Level 2 restriction because he spoke critically about CSFC, and therefore, the public disclosure of his testimony could threaten his personal safety. Maintaining a Level 2 restriction is essential to limit "private spite" and to protect Mr. Walker. *Nixon*, 435 U.S. at 598.

### **Witnesses #2 and #7**[9]

Both Witness #2 and Witness #7 work at the Federal Bureau of Prisons in

---

[8] The Tenth Circuit may wish to consult the following citations in the sealed record, which this Court cites as support for its decision to seal the entire testimony of Witness #1: (Doc. # 1107 at 26:25–27:3, 27:11–15, 28:2–12, 30:1–11, 31:9–22, 34:3–6, 35:13–15, 37:19–25, 38:1–14, 39:18–21, 45:19–21, 47:8–16, 49:9–25, 50:1–11, 60:12–13, 62:5–23, 65:3–20, 68:9–14, 69:17–25; 70:1–6, 71:9–11, 74:25, 75:1–10, 83:2–7, 85:6–25, 92:1–15, 97:7–11, 98:11–17, 99:4–25, 100:1–23, 102:3–5, 108:11–21, 119:19–22, 121:7–9, 122:6–19, 139:15–16, 141:2–5, 146:9–12, 149:5–16, 155:13–21, 157:9–21, 162:3–10, 166:1–6, 178:5–15).

[9] The Tenth Circuit may wish to consult the following citations in the sealed record, which this Court cites as support for its decision to seal the entire testimony of Witness #2: (Doc. # 1107 at 182:1–3, 183:11–22, 184:8–13, 184:23–24, 185:14–25, 187:3–9, 192:4–6); and Witness #7: (Doc. # 1108 at 151:16–20, 152:21–23, 153:19–25, 154:6–12).

Florence, Colorado. Because their testimony reflects negatively on some CSFC members, both witnesses are at risk of harassment. The Court's concern for the safety of these witness is exacerbated because they may have daily contact with incarcerated CSFC members at the Federal Bureau of Prisons. Redacting their names will not sufficiently protect these witnesses because their identities may easily be determined through the particular details of the testimony. Therefore, the Court determines that maintaining a Level 2 restriction is essential to preserving both Witness #2's and Witness #7's safety, and that this overcomes any legitimate interest the public has in viewing the transcript. *Press-Enter. Co.*, 478 U.S. at 10.

### Witness #3[10]

Witness #3 is an expert witness. Because full disclosure of Witness #3's testimony could embarrass one of the CSFC members, Ms. Lawson, the Court is concerned that Witness #3 is at risk of being a target of harassment by CSFC. The Court considered the Tenth Circuit's suggestion of releasing the testimony with narrowly tailored redactions of Witness #3's identity. (Doc. # 1124 at 25.) However, because the witness' identity could be determined through docket entries, simply redacting Witness #3's name would not be sufficient, as CSFC could then connect Witness #3's identity

---

[10] The Tenth Circuit may wish to consult the following citations in the sealed record, which this Court cites as support for its decision to seal the entire testimony of Witness #3: (Doc. # 1107 at 198:15–23, 199:10–16, 200:11–14, 202:10–25, 203:1–24, 204:4–24, 205:2–6, 206:3–16, 208:3–6, 208:21–25, 209:1–9, 212:10–14, 212:24–25, 213:1–25, 216:4–15, 217:2–8, 219:20–24, 220:20–23, 222:3–14, 223:10–23, 225:20–23, 226:1–15, 227:10–18, 230:1–17, 233:8–12, 238:5–8, 241:17–21, 242:1–6, 244:7–9, 249:10–18, 250:18–21, 256:7–16, 257:21–25, 258:1–2, 258:15–24, 259:3–5).

with the corresponding testimony. Therefore, this Court keeps the entirety of Witness #3's transcript sealed, as this is the best way to protect this vulnerable witness from "embarrassment and harm." *Davis v. Reynolds*, 890 F.2d at 1109.

### Witness #5[11]

Witness #5 has already endured harassment from Pastor Banks, and therefore, the Court is very concerned that Pastor Banks and other CSFC members could use Witness #5's testimony to "gratify private spite" by harassing this witness with additional vigor. *Nixon*, 435 U.S. at 598. Therefore, the Court maintains the Level 2 restriction on Witness #5's testimony.

### Witness #6[12]

Witness #6, an expert witness, testified extensively about this witness's examination of, and conversations with, Mr. Walker. Because this testimony describes what Mr. Walker experienced and how this relates to Witness #6's determination that Mr. Walker was under the undue influence of Pastor Banks, the Court is concerned that both Witness #6 and Mr. Walker could be retaliated against for Witness #6's testimony. Preserving both Witness #6's and Mr. Walker's safety are interests that outweigh the

---

[11] The Tenth Circuit may wish to consult the following citations in the sealed record, which this Court cites as support for its decision to seal the entire testimony of Witness #5: (Doc. # 1108 at 45:10–15, 46:9–20, 49:4–12, 51:14–24, 52:2–18, 59:14–17, 60:3–25, 61:1–10).

[12] The Tenth Circuit may wish to consult the following citations in the sealed record, which this Court cites as support for its decision to seal the entire testimony of Witness #6: (Doc. # 1108 at 73:13–25, 74:1–13, 75:7–11, 76:6–25, 77:1–2, 77:16–20, 78:11–17, 80:17–25, 81:2–22, 82:6–25, 83:1–6, 83:19–24, 84:20–23, 89:8–20, 90:8–25, 91:1–17, 96:6–13, 116:2–11, 118:17–24,122:13–24, 134:11–14, 143:15–19, 144:15–25).

presumption of public access to the testimony. *See Davis*, 890 F.2d at 1109. Therefore, the Court keeps Witness #6's transcript at a Level 2 restriction.

### Witnesses #9–#14[13]

Six former members of CSFC—Witnesses #9–#14—testified about their experiences with the church, their treatment by Pastor Banks, and their treatment by members of CSFC who remained in the church after they left. The Court remains extremely concerned for the safety of the former CSFC members who testified, and fears that any of their testimony may be used by CSFC in retaliation against those witnesses.

The former members of CSFC spoke very personally about the circumstances that led to either their expulsions from CSFC or their choices to leave CSFC. Because of this, simply redacting their names would not protect their identities. As a result, the Court finds that the public's general right to access to these records is outweighed by the "higher value[]" of preserving the safety of these witnesses. *Press-Enter. Co.*, 478 U.S. at 10.

---

[13] The Tenth Circuit may wish to consult the following citations in the sealed record, which this Court cites as support for its decision to seal the entire testimony of Witnesses ##9–14: (Doc. # 1109 at 8:14–25, 9:1–2, 16:8–10; 18:15-19; 21:19–25; 22:1, 22:13–25, 23:1–3, 23:17–23, 24:13–25, 25:1, 27:5–11, 29:6–10, 33:5–25, 36:10–13, 37:5–25, 38:1–20, 41:1–25; 42:1–25; 43:1–16, 46:10–25, 52:24–25, 54:4–13; 61:3–7, 61:18–25, 62:1–15, 66:10–23, 67:2–22, 75:17–21, 77:18–24, 80:8–12, 83:5–25, 88:5–11, 89:14–25, 90:1–23, 91:20–23, 104:3–11, 109:2–10, 111:17–25, 112:1–10, 114:8–25; 115:1–5, 117:12–22, 120:3–5, 121:1–8, 121:21–25, 122:1–22, 128:3–25, 129:1–8, 130:17–21, 131:2–19, 133:1–25, 134:1–25, 135:1–21, 140:14–18, 141:8–15, 145:2–25, 156:1–5).

## Witness #15[14]

Witness #15 testified as an expert witness. Because this witness' testimony contradicts the public image that CSFC seeks to project to the Colorado Springs community, Witness #15 could be at risk of harassment if this witness' testimony is released. Though the Tenth Circuit suggested that it might be possible to release the testimony of expert witnesses with redactions, the Court remains concerned that the identity of Witness #15 can be determined through docket entries. If Witness #15's identity is linked to this witness' testimony, Witness #15 could incur significant harassment. Therefore, "in light of the relevant facts and circumstances" of this case, this Court determines that the testimony of Witness #15's testimony must remain sealed. *Nixon*, 435 U.S. at 599.

> b. *Witness Testimony to be Unsealed*

## Witness #4

Witness #4, Vernon Lee Gaines, was the second process server who attempted to serve Pastor Banks with a subpoena. (Doc. # 1108 at 9–10.) Mr. Gaines describes the steps he took to locate Pastor Banks and serve process on her. (*Id.* at 10–32.) After carefully considering both Mr. Gaines' testimony and the Tenth Circuit's Order and Judgment (Doc. # 1124 at 25), the Court concludes that Mr. Gaines is not at risk of

---

[14] The Tenth Circuit may wish to consult the following citations in the sealed record, which this Court cites as support for its decision to seal the entire testimony of Witness #15: (Doc. # 1109 at 151:10–23, 152:2–25, 153:1–3, 153:15–18, 153:20–24, 154:9–17, 157:3–14, 161:12–25, 162:1–25, 163:1-19, 164:12–23, 165:20–25, 169:4–15, 182:16–23, 193:12–14, 195:14–25, 196:1–7, 197:19–23, 201:8–14, 204:20–25, 205:1–6, 207:2–20).

harassment because he does not speak negatively about CSFC. Therefore, public interest in Mr. Gains' testimony outweighs any risk to Mr. Gains. The Court releases the transcript of Mr. Gaines' testimony without any redactions.

## Witness #8

Witness #8, Joshua Lowther, was co-counsel for Mr. Walker and his codefendants during their sentencing and other post-conviction matters. (Doc. # 1108 at 159–61.) After carefully reviewing the transcript of his testimony in light of the Tenth Circuit's analysis in the Order and Judgment, the Court determines that Mr. Lowther's testimony is not likely to be used for "a spiteful or scurrilous purpose." (Doc. # 1124 at 25 n.12.) Therefore, the public's right to access judicial records outweighs other competing concerns, and Mr. Lowther's testimony will be released in full.

## IV.  CONCLUSION

For the foregoing reasons, the Court UNSEALS the transcripts IN PART:

1. The Court MAINTAINS the Level 2 restriction with respect to the testimony of Witness #1, Witness #2, Witness #3, Witness #5, Witness #6, Witness #7, Witnesses ##9–14, and Witness #15;

2. The Court LIFTS the Level 2 restriction with respect to the testimony of Witness #4 and Witness #8; and

3. The Court LIFTS the Level 2 restriction with respect to any statements by the Court, except those which reveal the identities of protected witnesses.

Any interested parties may submit a request and payment to the Court Reporter for a certified transcript of statements that are no longer under a Level 2 restriction.

DATED: November 21, 2019        BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge